2002 UT 37

**STATE of Utah, Plaintiff
and Respondent,**

v.

**Valden CRAM, Defendant and Petitioner.**

No. 20010046.

Supreme Court of Utah.

April 1, 2002.

Mark L. Shurtleff, Att'y Gen., Laura B. Dupaix, Asst. Att'y Gen., Salt Lake City, for plaintiff.

Aaron J. Prisbrey, St. George, for defendant.

HOWE, Chief Justice.

## INTRODUCTION

¶ 1 We granted certiorari to review an unpublished court of appeals decision affirming the trial court's denial of defendant Valden Cram's motion to dismiss a criminal information on the ground of double jeopardy.

## BACKGROUND

¶ 2 Cram was charged with four counts of tax evasion, a second degree felony, in violation of sections 76–8–1101(1)(c) and 59–1–401(9)(c) of the Utah Code. One count was dismissed before trial. The remaining three counts were tried before a jury. On the second day of trial, after hearing testimony, the jury was excused to deliberate at 6:47 p.m. At 9:09 p.m. the bailiff reported to the court that the jurors "indicated they were unable to reach a decision." The court then discussed with counsel the jurors' indecision and whether to give an *Allen*[1], or jury dead-

---

1. *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). An *Allen* instruction is a subsequent instruction given to a deadlocked jury to encourage the jurors to reevaluate their positions and make further attempts at reaching an agreement on the verdict.

lock, instruction. Defense counsel objected to the giving of the *Allen* instruction and moved for a mistrial on the basis that the jury had indicated that it could not reach a verdict. The court denied the motion for mistrial, but instead recalled the jury, gave an *Allen* instruction, and sent it back to deliberate further. Later, at about 9:50 p.m., the jury sent two questions to the court. The court conferred with both counsel on the record and sent responses to the jury. At approximately 10:15 p.m., the bailiff again reported that the jury was unable to reach a unanimous verdict. The court reconvened with the jury present and engaged in the following discussion with the foreperson:

> THE COURT: All right. And the report I've received through the bailiff is that the jury has been unable to reach a unanimous decision. Is that correct?
>
> JUROR HOLT: Yes.
>
> THE COURT: All right. Do you think that any additional period of time for deliberation would make any difference?
>
> JUROR HOLT: No.
>
> THE COURT: All right. All right. And do you have any question that you want to ask about that? There have been a couple of notes passed and some response given, although perhaps not as much response as you had hoped. Any question or—
>
> JUROR HOLT: No. (Inaudible).
>
> THE COURT: All right. Are those questions that you have not sent out to me so far?
>
> JUROR HOLT: Well, yes and no.
>
> THE COURT: Yes and no. Okay. All right. I guess I need to make sure I understand then. If there were a couple of questions answered, do you think you could reach a verdict or it would be at least worth deliberating longer or do you think that would just confirm the positions or decisions that the jurors have reached?
>
> JUROR HOLT: Well, speaking for myself, it would probably (inaudible).
>
> THE COURT: Okay. All right.
>
> Counsel, is there any record that you would like to make at this point?
>
> [DEFENSE COUNSEL]: I don't have anything, your Honor.

> [PROSECUTOR]: No, your Honor.
>
> THE COURT: All right. All right.
>
> Well, ladies and gentlemen of the jury, I'm not going to require you to stay any longer. I am going to release you from your duties here and excuse you to go home.... I'm going to declare that there is a mistrial, that the jury is not able to reach a verdict, and I'll excuse you and release you from your admonition.... Counsel, is there anything else for the record this evening?
>
> [DEFENSE COUNSEL]: No your Honor.

¶ 3 Subsequently, the trial court scheduled a second jury trial. Cram moved to dismiss the information, citing his Fifth Amendment right against being twice in jeopardy, and argued that the trial court's declaration of mistrial was not supported by his consent or by legal necessity. The trial court denied the motion to dismiss, finding that there was a proper termination of prosecution, that the jury was unable to reach a verdict, and that a proper record was made at the time the mistrial was declared.

¶ 4 Cram appealed. The court of appeals, in an unpublished unanimous memorandum decision, affirmed the trial court. The court of appeals refused to address Cram's claims because it (1) concluded that he had not objected to the trial court's decision to declare a mistrial and thus had failed to preserve his objections, and (2) found that Cram did not argue on appeal any of the exceptions to the preservation rule, which include plain error, exceptional circumstances, or ineffective assistance of counsel. *See State v. Holgate*, 2000 UT 74, ¶ 11, 10 P.3d 346; *State v. Dunn*, 850 P.2d 1201, 1225–26 (Utah 1993). The court of appeals then stated that were it to review the merits of the case, the outcome would not change. Relying on the standards we set out in *State v. Ambrose*, 598 P.2d 354 (Utah 1979), the court of appeals decided that the trial court properly explained its decision, discussed possible curative alternatives to a mistrial, supported its decision with findings of fact, and did not declare the mistrial so abruptly that Cram's counsel had no opportunity to object.

¶ 5 Cram then petitioned for, and this court granted, a writ of certiorari.

## STANDARD OF REVIEW

¶ 6 On certiorari, we review the decision of the court of appeals for correctness. "The correctness of the court of appeals' decision turns on whether that court accurately reviewed the trial court's decision under the appropriate standard of review." *State v. Visser*, 2000 UT 88, ¶ 9, 22 P.3d 1242. The court of appeals properly focused on whether the trial court abused its discretion in the declaration of a mistrial. *See Arizona v. Washington*, 434 U.S. 497, 509, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978); *Ambrose*, 598 P.2d at 358–60.

## ANALYSIS

¶ 7 Cram urges us to reverse the court of appeals and grant his motion to dismiss. He argues that the court of appeals erred by ruling (1) that he failed to preserve his objection to the mistrial for appeal and (2) that even if his objection was preserved, there is no double jeopardy violation because the mistrial was based on legal necessity. We address each argument in turn.

¶ 8 An accused has a constitutional right to be free from being put twice in jeopardy for the same offense. "The guarantee [against double jeopardy] assures that, with certain exceptions, an individual will not be forced to endure the strain, embarrassment, anxiety and expense of a [second] criminal trial." *Ambrose*, 598 P.2d at 357. "It is well established in Utah that jeopardy attaches when an accused is put on trial ... and a jury has been sworn and impaneled." *Id.* at 358. Normally, the State may not prosecute a defendant for the same offense more than once. However, "retrial is not automatically barred when a criminal proceeding is terminated without finally resolving the merits of the charges against the accused." *Arizona*, 434 U.S. at 505, 98 S.Ct. 824. Rather, courts must balance the defendant's right to have his trial concluded by a particular tribunal with the "public's interest in fair trials designed to end in just judgments." *Id.* at 516, 98 S.Ct. 824. Section

76–1–403 of the Utah Code does not bar reprosecution if the termination of prosecution was proper. Section 76–1–403(4) states that proper terminations include situations where the defendant consents to the termination, he waives his right to object to the termination, or the court finds that the termination is necessary.

## I. PRESERVATION

¶ 9 We noted in *State v. Holgate* that, "[a]s a general rule, claims not raised before the trial court may not be raised on appeal." 2000 UT 74, ¶ 11, 10 P.3d 346. We held further "that the preservation rule applies to every claim, including constitutional questions, unless a defendant can demonstrate that 'exceptional circumstances' exist or 'plain error' occurred." *Id.* at 350. In *State v. Emmett*, 839 P.2d 781, 783–84 (Utah 1992), we wrote that "our case law establishes that the doctrine of waiver has application if defendants fail to raise claims at the appropriate time at the trial level, so the judge has an opportunity to rule on the issue." Other cases note that in order to preserve a claim or an objection for appellate review, the defendant must raise a timely or contemporaneous claim or objection. *See State v. Dibello*, 780 P.2d 1221, 1226–27 (Utah 1989) (explaining that issue not properly preserved for appeal where defense fails to make objection to remarks at trial); *State v. Shickles*, 760 P.2d 291, 301 (Utah 1988) (holding that objection must be both timely and specific); *State v. Tillman*, 750 P.2d 546, 551 (Utah 1987) (holding that contemporaneous objection must be made to preserve a claimed error for appeal); *State v. Hall*, 671 P.2d 201, 202 (Utah 1983) (stating that dispositive circumstance necessary to preserve claimed error for appellate review is timely objection at trial).

¶ 10 The two policy reasons for the preservation rule are, first, to give the trial court an opportunity to "address the claimed error, and if appropriate, correct it," and second, that "a defendant should not be permitted to forego making an objection with the strategy of enhanc[ing] the defendant's chances of acquittal and then, if that strategy fails, ... claim[ing] on appeal that the Court should

reverse." *Holgate,* 2000 UT 74, ¶ 11, 10 P.3d 346 (citations omitted). As we said in *State v. Brown,* "defendants are thus not entitled to both the benefit of not objecting at trial and the benefit of objecting on appeal." 948 P.2d 337, 343 (Utah 1997).

 ¶ 11 Cram argues that he was not obligated to raise his objection to the dismissal of the jury and declaration of mistrial at the time of trial. Instead, he alerted the court of his objection to the mistrial and sought a dismissal of the case on double jeopardy grounds at the scheduling conference for the retrial. This was not a timely objection that would have allowed the trial court the opportunity to "correct the errors if appropriate." Further, this delay would allow Cram the benefit both of not objecting during trial, and of objecting on appeal. Allowing this delay would be contrary to the policy of the preservation rule.

¶ 12 Relying on *Ambrose,* Cram argues that he did not waive his objection because of his "mere silence" when the court declared a mistrial. In *Ambrose,* we held that we would "not presume that mere silence *in this situation* can be equated to waiver of such an important constitutional right." 598 P.2d at 360 (emphasis added). In that case, "the court acted so abruptly in discharging the jury that defendant's counsel had no opportunity to object. The double jeopardy protection is not so ephemeral that it vanishes if an accused does not anticipate and object to every unexpected action on the part of the court." *Id.* at 360–61. The present case is distinguishable from *Ambrose.* Cram's counsel had two opportunities to object for the record. The trial court gave counsel an opportunity to object before and after the court declared a mistrial. The trial court did not act so abruptly that a declaration of mistrial was unexpected. By stating that he had nothing for the record at both of these instances, defense counsel waived any objection to the court's declaration of mistrial.

## II. LEGAL NECESSITY

¶ 13 Because we decide this case based on the preservation rule, we need not address whether there was legal necessity for the mistrial.

## CONCLUSION

¶ 14 Because Cram did not make a timely objection to the trial court's declaration of the mistrial, and thus did not preserve his objection for appeal, double jeopardy does not bar Cram's retrial or potential conviction. The decision of the court of appeals is affirmed.

¶ 15 Associate Chief Justice RUSSON, Justice DURHAM, Justice DURRANT, and Justice WILKINS concur in Chief Justice HOWE's opinion.