2005 UT 92

**STATE of Utah, Plaintiff
and Respondent,**

v.

**David J. ORR, Defendant and Petitioner.**

No. 20041057.

Supreme Court of Utah.

Dec. 30, 2005.

Mark L. Shurtleff, Att'y Gen., Laura B. DuPaix, Asst. Att'y Gen., Salt Lake City, for plaintiff.

Larry R. Keller, Salt Lake City, for defendant.

On Certiorari to the Utah Court of Appeals

DURRANT, Justice:

## INTRODUCTION

¶ 1 The question before us is whether the district court erred in extending David J. Orr's probation when (1) Orr did not receive notice that the State intended to seek an extension of probation until seven days after his probation was originally set to expire and (2) the district court, in its written order, did not expressly find that Orr had violated a term of his probation or that such violation was willful. We conclude that notice of a probation extension proceeding is sufficient, even if served after the original probationary term was set to expire, provided a probation violation report is filed prior to the original expiration date and that the notice complies with due process. We further conclude that

to extend probation a court must make written findings that a defendant violated the terms of probation, but that a transcript of oral findings may satisfy this requirement. Applying these conclusions of law to the facts presented in this case, we affirm the judgment of the court of appeals that the district court properly extended Orr's probation.

## BACKGROUND

¶ 2 Orr pleaded guilty to two third degree felonies in connection with alleged fraud and securities violations. On May 12, 2000, the district court sentenced Orr to two consecutive prison terms of zero-to-five years. The district court suspended Orr's sentence and placed him on thirty-six months probation under the supervision of the Utah Adult Probation and Parole Department ("AP & P"). One of the conditions of Orr's probation was that he pay $365,504.39 in restitution in monthly installments of "no less than $1,000 ... or 25% of [his] income."

¶ 3 Until May 2003, the month Orr's probation was set to expire, Orr made monthly restitution payments of approximately $1,000. In that month, however, Orr failed to make his restitution payment. Because Orr had failed to pay the full restitution amount, AP & P filed a probation violation report on May 9, 2003,[1] and asked the court to order Orr to show cause as to why his probation should not be revoked. On May 12, 2003, the court issued the order to show cause, which was served on Orr on May 19, 2003.

¶ 4 Orr moved to dismiss the order to show cause, arguing that the district court lost jurisdiction to extend his probation on May 12, when his probation expired. Orr further argued that the district court did not have jurisdiction over him because AP & P did not file its report and serve him with notice before his probation expired. The court, citing Utah Code section 77–18–1(11)(b) (2003),[2] held that the May 9 filing tolled Orr's probationary period and provided it with jurisdiction to extend Orr's probation. The district court then extended Orr's probation for the full ten-year term of Orr's suspended prison sentence.

¶ 5 Orr appealed to the court of appeals, where he again raised the notice argument and further argued that the district court lacked authority to extend his probation because it did not make a specific factual finding that he willfully violated his probation terms.[3] *State v. Orr*, 2004 UT App 413, ¶¶ 8, 11, 103 P.3d 164. The court of appeals affirmed the district court's holding that the May 9 filing tolled Orr's probationary period. *Id.* ¶ 10. The court of appeals did not determine whether a written statement of factual findings or a finding of willfulness was required to extend probation, but instead determined that even if these rules were applicable to probation extension, the district court's order and record demonstrated a sufficient factual basis to extend Orr's probation. *Id.* ¶¶ 11–13.

¶ 6 We granted certiorari to review the court of appeals' decision. We have jurisdiction pursuant to Utah Code section 78–2–2(5) (2002).

## STANDARD OF REVIEW

¶ 7 On certiorari, we review the court of appeals' decision for correctness and grant no deference to its conclusions of law. *Allstate Ins. Co. v. Wong*, 2005 UT 51, ¶ 12, 122 P.3d 589. "Our review extends no further than to determine whether the court of

---

1. Based on a handwritten adjustment to the date stamp on the probation violation report, Orr alleges that the probation violation report was filed on May 13, 2003, the date the violation report was docketed. But the district court held that the probation violation report was filed on May 9, 2003, based on AP & P agent Robert Egelund's testimony and on the date stamp on the report. The court of appeals accepted that finding, *see State v. Orr*, 2004 UT App 413, ¶ 9, 103 P.3d 164, and that issue is not before us on certiorari.

2. Utah Code section 77–18–1(11)(b) provides that "[t]he running of the probation period is tolled upon the filing of a violation report with the court alleging a violation of the terms and conditions of probation or upon the issuance of an order to show cause or warrant by the court."

3. At the court of appeals, Orr also argued that any extension of probation is limited to the length of the original probationary period. The court of appeals agreed and reversed on this issue. *Orr*, 2004 UT App 413, ¶ 15, 103 P.3d 164. That issue is not before us on certiorari.

appeals accurately reviewed the trial court's decision under the appropriate standard of review." *Id.* (internal quotation marks omitted).

¶ 8 In this case, no party has asserted that the court of appeals applied an incorrect standard of review to either of the issues before us on certiorari. The court of appeals appropriately applied a correctness standard of review to the questions of law and a clearly erroneous standard of review to the district court's factual findings. *State v. Orr,* 2004 UT App 413, ¶ 7, 103 P.3d 164.

¶ 9 The court of appeals does not, however, set forth the standard of review for mixed questions of law and fact such as whether the district court's factual findings were sufficient to support the extension of Orr's probation under the applicable laws. In a probation extension proceeding, the district court has discretion "to grant, modify, or revoke probation." *State v. Jameson,* 800 P.2d 798, 804 (Utah 1990). Therefore, to reverse the district court's decision in such proceedings, a reviewing court must determine "that the evidence of a probation violation, viewed in a light most favorable to the trial court's findings, is so deficient that the trial court abused its discretion in revoking [or modifying appellant's] probation." *Id.* Thus, in addressing the question of whether there were sufficient factual findings to support the extension of Orr's probation, we will review the district court's determination for an abuse of discretion.

## ANALYSIS

¶ 10 In this case, Orr argues that the district court improperly extended his probation (1) because he did not receive notice that the State intended to extend his probation until after his probation was set to expire and (2) because the district court's findings were insufficient. Before addressing these arguments, we must first decide the threshold issue of whether the due process requirements for probation *extension* are coextensive with those provided for probation *revocation.*

I. AT BOTH PROBATION REVOCATION AND PROBATION EXTENSION PROCEEDINGS, A DEFENDANT SHOULD BE AFFORDED THE MINIMUM REQUIREMENTS OF DUE PROCESS.

¶ 11 The Fourteenth Amendment of the United States Constitution forbids a state from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. This amendment guarantees both substantive and procedural due process rights. What constitutes due process, however, depends upon the type of proceeding and, more specifically, "the nature of the individual interest affected, the extent to which it is affected, the rationality of the connection between legislative means and purpose, [and] the existence of alternative means for effectuating the purpose." *Bearden v. Georgia,* 461 U.S. 660, 666–67, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983) (alteration in the original) (internal quotation marks omitted).

¶ 12 Based on these considerations, the United States Supreme Court has determined that probation revocation proceedings, which are not criminal in nature [4] and involve only a conditional liberty interest, are entitled only to the "minimum requirements of due process." *Gagnon v. Scarpelli,* 411 U.S. 778, 786, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) (internal quotation marks omitted).

¶ 13 Neither this court nor the United States Supreme Court has addressed the question of whether a defendant in a probation *extension* proceeding is entitled to the same rights as a defendant in a probation *revocation* proceeding. Clearly, a defendant in an extension proceeding is not entitled to greater due process rights, because at such a proceeding we are not dealing with the immediate, "grievous loss of liberty implicated in a revocation of probation," but instead with a mere continuation of probationary re-

---

4. There are significant differences between criminal trials and probation violation hearings, such as, "[i]n most cases, the probationer ... has been convicted of committing another crime or has admitted the charges against him." *Gagnon v. Scarpelli,* 411 U.S. 778, 787, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973).

strictions and the "possibility of future revocation." *United States v. Ortiz,* 733 F.2d 1416, 1417–18 (10th Cir.1984).

¶ 14 What is less clear, however, is whether a defendant is entitled to *any* due process rights at an extension proceeding. Many jurisdictions have held that due process protections do not attach to probation extension proceedings.[5] *Skipworth v. United States,* 508 F.2d 598, 601–02 (3d Cir.1975) (holding that due process does not require notice and hearing for a probation extension because the loss of liberty is "merely potential"); *United States v. Carey,* 565 F.2d 545, 547 (8th Cir.1977) ("[A] mere noncustodial period of supervision to a term within the statutory limits [does not] implicate[ ] a liberty interest sufficient to require a pre-extension hearing as a constitutionally commanded right."); *United States v. Cornwell,* 625 F.2d 686, 688 (5th Cir.1980) ("[E]xtension of a non-custodial period of supervision to a term within the statutory limits (does not) implicate a liberty interest sufficient to require a preextension hearing as a constitutionally commanded right." (internal quotation marks omitted)); *Forgues v. United States,* 636 F.2d 1125, 1127 (6th Cir.1980) (holding ex parte extension did not offend due process because "[p]robation ... is a non-custodial supervisory period far less onerous to the probationer than the incarceration which results from the revocation of probation"); *United States v. Silver,* 83 F.3d 289, 291–92 (9th Cir.1996) (holding probation extension does not result in "a liberty interest [being] so infringed as to require this court to call for additional protections as per the Due Process Clause"). But many of these same courts have invoked their supervisory power to require that the probationer receive notice of the extension hearing and be advised of a right to a hearing and to counsel. *Skipworth,* 508 F.2d at 602–03 (requiring notice of proposed exten-

sion and right to hearing and counsel); *Cornwell,* 625 F.2d at 689 (invoking supervisory powers to require courts to notify probationers of proposed extensions and right to a hearing); *Forgues,* 636 F.2d at 1127 (same). *Contra Carey,* 565 F.2d at 547 (declining to use supervisory power to require a probation extension hearing).

¶ 15 One of the justifications offered by these jurisdictions for not extending due process rights to extension proceedings is that the factual inquiry in extension proceedings is "quite different" than that in revocation proceedings. *Skipworth,* 508 F.2d at 602; *accord Silver,* 83 F.3d at 292; *Carey,* 565 F.2d at 547. Specifically, in revocation proceedings a court must "resolve a contested factual determination ... [and] decide whether there was, in fact, a violation of probation." *State v. Smith,* 255 Conn. 830, 769 A.2d 698, 705 (2001). In contrast, in most extension proceedings, a court may extend probation without finding that any probation violation occurred. *Id.*

¶ 16 In Utah, however, Utah Code section 77–18–1 (the "Probation Statute") requires a court to hold a hearing in order to extend, modify, or revoke probation, unless that right is waived, and to find that the probationer has violated the terms of probation. *See* Utah Code Ann. § 77–18–1(12)(a) (Supp.2005). Because our Probation Statute requires a hearing (and a probation violation) to extend probation, we require that the hearing be conducted in accordance with the "minimum requirements of due process," commensurate with those applicable to revocation proceedings. Having determined that a probationer must be afforded the minimum requirements of due process at a probation extension proceeding, we now turn to Orr's arguments

---

5. Some courts, including the Utah Court of Appeals, have held that the due process rights applicable to a probation extension proceeding are commensurate with those applicable to probation revocation. *See State v. Rawlings,* 893 P.2d 1063, 1067 (Utah Ct.App.1995) (holding that a probationer is entitled to due process protections at a probation extension proceeding); *State v. Korzuch,* 186 Ariz. 190, 920 P.2d 312, 314–16 (1996) (declining to follow federal cases and holding that due process applies to extension

proceedings because probation imposes obligations upon the probationer); *Cook v. Commonwealth,* 211 Va. 290, 176 S.E.2d 815, 817–18 (1970) ("[F]undamental fairness requires a judicial hearing of a summary nature for the probation period to be extended, since increasing the period of probation has the effect of extending the restraints on the probationer's liberty which are normally incident to his probation and extends the time period during which revocation may occur.").

that his extension proceeding did not meet those requirements.

## II. THE DISTRICT COURT PROPERLY EXTENDED ORR'S PROBATION EVEN THOUGH HE DID NOT RECEIVE NOTICE UNTIL AFTER HIS PROBATION WAS SET TO EXPIRE.

¶ 17 The first argument raised by Orr is that his due process rights were violated because he did not receive notice of the State's intent to extend probation prior to the expiration of the original probationary term. We hold that due process does not require such notice and that Orr was properly notified of the State's intention to seek probation extension.

¶ 18 Generally, a "court's power to grant, modify, or revoke probation is purely statutory." *Smith v. Cook,* 803 P.2d 788, 791 (Utah 1990). In Utah, the procedures that a court must follow to extend a defendant's probation are set forth in the Probation Statute, Utah Code section 77–18–1 (Supp.2005). The current version of the Probation Statute provides, in pertinent part, that a term of probation may terminate, by operation of law, "upon completion without violation of [the requisite number of] months probation." *Id.* § 77–18–1(10)(a)(i). It further provides, "[t]he running of the probation period is tolled upon the filing of a violation report with the court alleging a violation of the terms and conditions of probation or upon the issuance of an order to show cause or warrant by the court." *Id.* § 78–18–1(11)(b).

¶ 19 Orr does not dispute that the tolling provision gave the district court statutory authority to extend his probation, but instead argues that due process demands that a probationer receive notice of the State's intent to extend probation prior to the expiration of the original probationary term. We disagree.

¶ 20 As discussed above, in a probation modification proceeding, a probationer is entitled only to the "minimum requirements of due process." These requirements include

(a) written notice of the claimed violations of [probation]; (b) disclosure to the [proba-tioner] of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a neutral and detached hearing body ...; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking [probation].

*Gagnon v. Scarpelli,* 411 U.S. 778, 786, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) (internal quotation marks omitted). The probationer also has the right to the assistance of counsel in some circumstances. *Black v. Romano,* 471 U.S. 606, 612, 105 S.Ct. 2254, 85 L.Ed.2d 636 (1985).

¶ 21 Nowhere in these requirements is a probationer required to be given notice prior to the expiration of the original probation term. Orr relies, however, on a series of cases from this jurisdiction—*State v. Green,* 757 P.2d 462 (Utah 1988); *Smith v. Cook,* 803 P.2d 788 (Utah 1990); and *State v. Call,* 1999 UT 42, 980 P.2d 201—which he claims stand for the proposition that due process requires a probationer to receive notice of the State's intent to extend probation prior to the date probation is set to expire.

¶ 22 This reliance is misplaced. None of these cases stands for the proposition that *due process* requires a probationer to receive notice prior to the expiration of probation. In fact, neither *Green* nor *Call* held that notice is required prior to the expiration of the original probationary term. In *Green,* we merely held that probation revocation proceedings must be initiated before the expiration of the probationary period. 757 P.2d at 464–65. That holding is consistent with the requirement here that a probation violation report must be filed prior to the probation expiration. In *Call,* we did not need to decide when a probationer must receive notice because we found that Call had received notice prior to the expiration of probation. 1999 UT 42, ¶ 12, 980 P.2d 201 (holding that signing a waiver of personal appearance is sufficient notice).

¶ 23 *Smith* is the only case Orr relies on that holds that a probationer is entitled to notice prior to expiration of probation. And neither it nor any of the other cases Orr relies on was decided on due process grounds. In both *Green* and *Smith*, the court's holding was based on its construction of an earlier version of the Probation Statute, which did not include the tolling provision.[6] *See Green*, 757 P.2d at 465 (stating that approaches for retaining jurisdiction over revocation proceedings after the original probationary term has expired are "largely a function of the statutory language of each state"); *Smith*, 803 P.2d at 793 ("We ... hold that *under the statute applicable* to Smith's case, the trial court lacked the authority to revoke Smith's probation ...." (emphasis added)). The only case that even mentions due process is *Smith*, which states that a requirement that notice be given prior to the probation expiration is in "accord" with the due process requirements. 803 P.2d at 795. This statement does not demonstrate that such a requirement was the minimum mandated by due process, but rather that it was within the scope of due process requirements for probation revocation proceedings. Moreover, the court in *Smith* expressly recognized that its holding may not be applicable to the amended versions of the Probation Statute, which contain the tolling provision. *Id.* at 796 n. 40.

¶ 24 In *Call*, the only case Orr cites that interprets a version of the Probation Statute with the tolling provision, we stated in dicta that *Green* and *Smith*

> instruct that if it is the intent of the State to extend the probationary period beyond its original term, the State must take definitive action to extend the term before the expiration date, and the probationer

must be given notice of that intent. Otherwise, the probationer is left in a state of uncertainty, not knowing whether to continue to observe the terms of his probation.

1999 UT 42, ¶ 11, 980 P.2d 201.

¶ 25 To the extent that this language implies that due process requires a probationer to receive notice of a State's intent to extend probation, it is more restrictive than the due process requirements set out by the United States Supreme Court in *Gagnon*[7] and inconsistent with the applicable version of the Probation Statute.[8] Furthermore, the statement in *Call* that a probationer will not know whether to continue the terms of his probation does not raise substantive due process concerns because the probationer's rights are adequately protected by the rule that a probationer must have adequate notice of what conduct is required to maintain his probationary status. *See State v. Hodges*, 798 P.2d 270, 277 (Utah Ct.App.1990) (holding that "a probationer [must] be clearly and accurately apprised of the expectations for remaining on probation"). In other words, if a probationer mistakenly believes that his probation has expired (because he has not received notice of the State's intent to extend probation) and, as a result of that belief, violates a term of his probation, a court generally could not further extend or revoke the probation based on that violation.

¶ 26 For a notice to meet the minimum requirements of due process to which a probationer is entitled in an extension proceeding, the defendant need not receive notice before the original probationary term expires. He need merely receive notice of the accusations against him and the notice must provide him an adequate opportunity to prepare a response to those accusations. In this

---

6. *Smith* and *Green* applied Utah Code section 77–18–1 (Supp.1981) and Utah Code section 77–18–1 (Supp.1984) respectively. *See Green*, 757 P.2d at 462; *Smith*, 803 P.2d at 793–94. The tolling provision was added to the Probation Statute in 1989. Probation Amendments, ch. 226, § 1, 1989 Utah Laws, 689, 690 (effective April 24, 1989).

7. There is nothing in Utah's Constitution that suggests that it provides greater due process protection than the United States Constitution and, in fact, both due process provisions utilize nearly

identical language. *Compare* U.S. Const. amend. XIV, § 1 ("No State shall ... deprive any person of life, liberty, or property, without due process of law."), *with* Utah Const. art. I, § 7 ("No person shall be deprived of life, liberty or property, without due process of law.").

8. The version of the Probation Statute applicable to Orr is Utah Code section 77–18–1 (2003). Although the Probation Statute has been amended since then, Act of ___, 2005, ch. 14, § 3, 2005 Utah Laws ___, the changes do not affect our analysis here.

case, it is clear that the minimum requirements of due process were met. Orr does not dispute that he received notice of the accusations against him or that the notice gave him an adequate opportunity to prepare a response to those accusations. And, in fact, more than a month before the extension proceeding, Orr received written notice that a probation violation report had been filed and that a hearing would be held. Instead, Orr's only argument regarding notice was that he did not receive it prior to the expiration of his original probationary term. As neither due process nor Utah's Probation Statute require such notice, we conclude that the district court had authority to extend Orr's probation.

## III. THE DISTRICT COURT'S FINDINGS WERE SUFFICIENT TO EXTEND ORR'S PROBATION.

¶ 27 Orr next argues that the district court's findings were inadequate to support the extension of his probation for two reasons: (1) in its written order, the district court did not expressly find that Orr violated his probation and (2) the district court did not find that Orr's probation violation was willful.

¶ 28 The Probation Statute provides that "[p]robation may not be modified or extended except upon waiver of a hearing by the probationer or upon a hearing and a finding in court that the probationer has violated the conditions of probation." Utah Code Ann. § 77–18–1(12)(a)(i) (2003). After a hearing to extend probation, "the court shall make findings of fact." *Id.* § 77–18–1(12)(e)(i). Nowhere in the Probation Statute is the district court required to make written findings of fact or to find that such violation was willful. *See id.* § 77–18–1.

¶ 29 We therefore focus our analysis on whether due process requires a district court to make written findings of fact or to find that a defendant has willfully violated the terms of his probation. We will address each of these issues before turning to the question of whether the district court's findings were sufficient to support its extension of Orr's probation.

### A. The Record Must Reflect the Evidence Relied on and the Reasons for Extending Probation.

¶ 30 One of the "minimum requirements of due process" is that a defendant receive "a written statement by the factfinder as to the evidence relied on and the reasons for revoking probation." *Black v. Romano*, 471 U.S. 606, 612, 105 S.Ct. 2254, 85 L.Ed.2d 636 (1985); *Gagnon v. Scarpelli*, 411 U.S. 778, 786, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); *United States v. Gilbert*, 1995 U.S.App. LEXIS 33744, *7–8 (10th Cir. Dec. 4, 1995) (unpublished opinion).

¶ 31 Because the purpose of the written statement requirement is to provide a basis for review and encourage accurate factfinding, *Black*, 471 U.S. at 613–14, 105 S.Ct. 2254; *Gilbert*, 1995 U.S.App. Lexis 33744, at *7–8, a transcribed oral finding or district court order is sufficient to meet that requirement so long as it enables the reviewing court to determine the basis of the district court's decision. *See Gilbert*, 1995 U.S.App. Lexis 33744, at *7–8; *accord Morishita v. Morris*, 702 F.2d 207, 210 (10th Cir.1983) ("We hold that written findings are constitutionally required only if the transcript and record before the judge do not enable a reviewing court to determine the basis of the judge's decision to revoke probation."); *Morishita v. Morris*, 621 P.2d 691, 693 n. 2 (Utah 1980) (holding that findings were sufficient despite a lack of express written findings because the transcript revealed "the judge's thought process and the conclusions he drew from the evidence").

¶ 32 We now turn to the issue of whether the district court was required to find that a probation violation was willful.

### B. A Court May Extend Probation if it Finds That a Probationer Willfully Failed to Pay Restitution or That Alternative Means of Punishment Are Inadequate to Punish or Deter.

¶ 33 The United States Supreme Court has recognized that a defendant's probation, in some instances, may be revoked regardless of whether the defendant is at fault for violating the terms of his probation.

*See Bearden v. Georgia,* 461 U.S. 660, 669 n. 9, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983); *see also United States v. Warner,* 830 F.2d 651, 657 (7th Cir.1987) ("If ... probation's purposes have been frustrated, revocation is fair and appropriate even if the probationer did not willfully violate his probation conditions."). Failure to pay restitution is not one of those instances. *Bearden,* 461 U.S. at 668. The fundamental fairness requirement of the Fourteenth Amendment forbids the revocation of probation when a probationer has failed to pay restitution or a fine through no fault of his own. *Id.*

¶ 34 To revoke probation for failure to pay restitution, a court must find that the probationer willfully refused to pay or that he failed to make sufficient bona fide efforts to seek employment or borrow money. *Id.* If, however, a court finds that a "probationer has made all reasonable efforts to pay the fine or restitution, and yet cannot do so through no fault of his own," the court must consider "whether adequate alternative methods of punishing the defendant are available." *Id.* at 668–69, 103 S.Ct. 2064. Then, "[o]nly if alternative measures are not adequate to meet the State's interests in punishment and deterrence[,] may the court imprison a probationer." *Id.* at 672, 103 S.Ct. 2064; 21A Am.Jur.2d *Criminal Law* § 908 (1998).

¶ 35 It is not clear whether the willfulness requirement applies to the mere extension of probation for failure to pay restitution. We do not need to decide that issue here, however, because, as we discuss below, we find that the district court made sufficient findings of fact to support the extension of probation even under the standard for revoking probation. We now turn to the issue of whether the district court made findings of fact sufficient to support its extension of Orr's probation.

### C. The District Court Made Findings of Fact Sufficient to Support Its Extension of Orr's Probation.

¶ 36 Applying the above rules to the facts of this case, we hold that the district court had authority to extend Orr's probation and that it did not abuse its discretion ·in doing so. First, although the district court did not specifically designate a portion of its order as written findings of fact, the record adequately reflected the evidence the district court relied on and its reasons for extending probation. It is clear from the record that the district found that Orr had violated the condition of his probation requiring him to pay restitution to his victims. For example, at the hearing the district court stated that Orr "hasn't paid a nickel on his restitution since he thought probation was over." Then, in its written order, the district court stated

The defendant's failure to pay the May and June installments of his restitution underscores the fact that the defendant is induced to repay his victims only when he is in the shadow of probation and the threat of incarceration is held over him.

¶ 37 Second, although the district court did not explicitly find that Orr's violation was willful, such a finding was implicit from its order, which stated that "[Orr] is induced to repay his victims only when he is in the shadow of probation and the threat of incarceration is held over him" and "[Orr's] only incentive to continue making restitution payments is to avoid his probation being revoked." This language further shows that the court determined that other alternatives for punishing Orr were inadequate. Although it could be argued that the district court's failure to mention the possibility of bench probation [9] demonstrates that it did not consider other alternatives, in *Black,* the Supreme Court held that a district court is not required to explain on the record its consideration and rejection of alternatives to incarceration. 471 U.S. at 616, 105 S.Ct. 2254.

¶ 38 We therefore hold that the district court did not abuse its discretion in extending Orr's probation.

### CONCLUSION

¶ 39 The district court properly extended Orr's probation. First, neither due process

---

9. Utah Code section 77–18–1(10)(a)(ii) (2003) provides that when a probationer is unable to pay full restitution before the expiration of the probationary term, "the court may retain jurisdiction of the case and continue the defendant on bench probation for the limited purpose of enforcing the payment of the account receivable."

nor Utah's Probation Statute requires a defendant to receive notice of the State's intent to extend probation prior to the expiration of the original probationary term. Therefore, even though Orr did not receive notice until after his original probation term had expired, the district court had statutory authority to extend Orr's probation because the probation violation report was filed within the probationary term.

¶ 40 Second, the district court did not abuse its discretion in extending Orr's probation. The hearing transcript and the district court's order were sufficient to meet the written statement requirement. Furthermore, the language of the written order implies that Orr's violation was willful and that alternatives to extending his probation were inadequate. We affirm.

¶ 41 Chief Justice DURHAM, Associate Chief Justice WILKINS, Justice PARRISH, and Justice NEHRING concur in Justice DURRANT's opinion.